# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Criminal Action No.: 0:19-cr-00420-JMC |
| v. ) | |
| ) | **ORDER** |
| George Alexander Underwood, ) | |
| John Ricardo Neal, Jr., and ) | |
| Robert Andrew Sprouse, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on the Government's Motion in Limine Seeking Admission of Evidence of Other Acts Committed by Defendants (ECF No. 169). For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART** the Government's Motion (*Id.*).

## I.     RELEVANT BACKGROUND

George Alexander Underwood ("Underwood") was elected Sheriff of Chester County in November 2012 and served as Sheriff until May 2019. (ECF No. 146 at 1.) During Underwood's tenure as Sheriff, Robert Andrew Sprouse ("Sprouse") served as Underwood's Chief Deputy and John Ricardo Neal, Jr. ("Neal") was a lieutenant in the Chester County Sheriff's Office. (*Id.* at 1-2.)

On September 16, 2020, a federal grand jury returned a seventeen-count Second Superseding Indictment against Defendants. (ECF No. 146.) The Second Superseding Indictment charged:

- Underwood with conspiracy, falsification of records in federal investigation, federal program theft, deprivation of rights, false statement, tampering, and wire fraud;
- Neal with conspiracy, falsification of records in federal investigation, federal program theft, deprivation of rights, and wire fraud; and
- Sprouse with conspiracy, falsification of records in federal investigation, federal program theft, tampering, and false statement.

1

(*Id.*)

On November 20, 2020, the Government filed the instant Motion in Limine to Admit Evidence of Other Acts (ECF No. 169). Specifically, the Government seeks to admit evidence that:

- As Sheriff, Underwood, with the aid of Neal and Sprouse, abused the power of his office to retaliate against other persons, such as political opponents, and reward allies;
- As Sheriff, Underwood violated the County's procurement policy, misused public funds, and converted public resources for his personal benefit and the benefit of his allies; and
- During his employment with the Chester County Sheriff's Office, Neal used excessive force against arrestees.

(*Id.* at 1.) It asserts that such evidence is admissible because it is either intrinsic to the charged offenses or admissible under Federal Rule of Evidence 404(b). (*Id.*) The Government "intends to present most of the proposed evidence through witnesses it already plans to call at trial as part of its case in chief." (*Id.*) Defendants did not submit a response.

## II.     LEGAL STANDARD

"Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006). "The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *United States v. Verges*, No. 1:13-cr-222-JCC, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). When ruling upon a motion in limine, a federal district court exercises "wide discretion." *United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir. 1996) (quoting *United States v. Heyward*, 729 F.2d 297, 301 n.2 (4th Cir. 1984)).

Federal Rule of Evidence 404(b)(1) provides that evidence "of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Rule 404(b)(2) states that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." "To be admissible under Rule 404(b), the evidence must be (1) relevant to an issue other than the general character of the defendant, (2) necessary to prove an essential claim or element of the charged offense, and (3) reliable." *United States v. Sterling*, 860 F.3d 233, 246 (4th Cir. 2017). Federal Rule of Evidence 403 also demands that the evidence's probative value not be substantially outweighed by its unfair prejudice to the defendant. *Id.* at 246-47. "Rule 404(b) is viewed as an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *United States v. Young*, 248 F. 3d 260, 271-72 (4th Cir. 2001) (internal quotes and citation omitted).

Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." In assessing relevancy, the "more similar the prior act is . . . to the act being proved, the more relevant it becomes." *United States v. McLaurin*, 764 F.3d 372, 380 (4th Cir. 2014) (quoting *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997)). Evidence is necessary when it is "probative of an essential claim or an element" in a manner not offered by "other evidence available to the government." *Sterling*, 860 F.3d at 247 (quoting *Queen*, 132 F.3d at 997-98). To be reliable, evidence must be sufficient to allow the jury to "reasonably conclude that the act[s] occurred and that the defendant was the actor." *Id.* (quoting *United States v. Powers*, 59 F.3d 1460, 1467 (4th Cir. 1995)).

3

Rule 404(b) "does not affect the admission of evidence that is intrinsic to the alleged crime." *United States v. Webb*, 965 F. 3d 262, 266 (4th Cir. 2020) (quoting *United States v. Sutherland*, 921 F.3d 421, 430 (4th Cir. 2019)). Acts are appropriately classified as intrinsic, and thus not subject to a Rule 404(b) analysis, "when they are inextricably intertwined [with the charged conduct] or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996) (citation and internal quotation marks omitted). Put differently, "evidence of other bad acts is intrinsic if, among other things, it involves the same series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial." *Webb*, 965 F. 3d at 266. "[E]vidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy are not extrinsic evidence, i.e., evidence of other acts, for purposes of Rule 404(b)." *United States v. Melvin*, 2007 WL 2046735, at *13 (4th Cir. July 13, 2007). "Acts committed in furtherance of the charged conspiracy are themselves part of the act charged. Thus, evidence of such acts constitutes intrinsic evidence-that is, direct evidence of the charged conspiracy itself." *Id.*

### III.    ANALYSIS

A. <u>Alleged prior acts of Defendants' misuse of their positions</u>

The Government first seeks to offer evidence of other instances in which Defendants abused their power to retaliate against or harass others. (ECF No. 169 at 6.) Specifically, the Government seeks to introduce the following evidence:

- Underwood directed a Sheriff's Office employee to stop and cite a state legislator who had opposed Underwood's wife's appointment as a magistrate judge in Chester County. The deputy understood that Underwood's request was designed to harass the state legislator and would not have issued the citation without Underwood's direction because he was not ordinarily responsible for traffic enforcement;

4

- Underwood instructed Sheriff's Office personnel to arrest his predecessor's brother-in-law for driving under the influence in retaliation for a personal grievance;
- In early 2019, Underwood directed Sheriff's Office leadership to find a reason to jail the Chester County Treasurer because the Treasurer would not approve a pay raise for the Sheriff's Office. The Treasurer was "so concerned about the threat that he did not leave his house on New Year's Eve out of fear that he would be falsely arrested";
- Underwood told deputies to surveil a group of local public officials and prominent citizens who were considering replacing school resource officers with private security and find a reason to arrest or cite them;
- Sprouse instructed a Sheriff's Office employee to perform criminal record checks of individuals who criticized Underwood on social media; and
- In 2015, Underwood directed a deputy to dismiss drug charges against the son of one of Underwood's biggest political supporters.

(*Id.* at 6-8.) The Government argues that this evidence is admissible as proof of the charged conspiracy. (*Id.* at 8.) In the alternative, it asserts that the evidence is admissible pursuant to Rule 404(b). (*Id.*)

Although the prior acts at issue are not specifically alleged in the Second Superseding Indictment, the court finds that they are admissible because they are intrinsic to the charged conspiracy. The Second Superseding Indictment alleges that the conspiracy began "at a time unknown, but at least in and around 2015" and continued until at least in and around May 2019. (ECF No. 146 at 4.) It contends that Defendants perpetuated the conspiracy by "[u]sing their positions as law enforcement officers to intimidate others;" "[e]stablishing a climate of fear within the Sheriff's Office to direct and secure obedience among subordinates;" and "[a]busing the rights of others[.]" (ECF No. 146 at 5-6.)

Here, the alleged prior acts illustrate instances where Underwood and Sprouse "[u]s[ed] their positions as law enforcement officers to intimidate others;" "[e]stablish[ed] a climate of fear within the Sheriff's Office to direct and secure obedience among subordinates;" or "[a]bus[ed] the rights of others[.]" (*Id.* at 5-6.) Two of the proposed prior acts, directing Sheriff's Office

5

leadership to find a reason to jail the Treasurer and dismissing charges against a supporter's son, fall squarely within the alleged time period of the conspiracy. It is unclear when the other proposed acts occurred, but they also appear to fall within the alleged time period of the conspiracy. All of the prior acts allegedly occurred while Underwood was Sheriff and the Second Superseding Indictment states that the conspiracy began "at a time unknown" but concerns conduct during Underwood's tenure as Sheriff. (*Id.* at 4.) As a result, the proposed prior acts are admissible as acts committed in furtherance of the charged conspiracy. *See United States v. Janati*, 374 F. 3d 263, 270 (4th Cir. 2004) ("It is well established that when seeking to prove a conspiracy, the government is permitted to present evidence of acts committed in furtherance of the conspiracy even though they are not all specifically described in the indictment."). Moreover, the proposed acts "complete the story of the crime on trial" by providing context reinforcing the acts alleged in the Second Superseding Indictment. *Webb*, 965 F. 3d at 266.

Finally, any prejudice toward Defendants that would result from admission of the proposed acts would not substantially outweigh the probative value of the proposed acts. As the evidence will be used to show Defendants' involvement in the conspiracy, it is naturally no more sensational than the crime charged.

B. <u>Alleged prior acts of misuse of public funds and resources by Underwood</u>

Second, the Government seeks to introduce evidence that Underwood violated procurement policies, misused public funds, and converted public resources for his personal benefit and the benefit of his allies during his time as Sheriff. (ECF No. 169 at 9.) Specifically, the Government intends to introduce evidence that:

- Underwood frequently violated the County's procurement policy and misused public funds by purchasing vehicles and equipment with unauthorized funds, making purchases without prior approval, and incurring or seeking reimbursement for unapproved costs such as travel expenses. Several Chester

6

- County officials and employees responsible for managing County finances discussed the violations and unapproved expenditures with Underwood;
- Sheriff's Office employees heard Underwood, Neal, and others discuss routing security detail payments through a Chester County Detention Center bank account to avoid tax deductions; and
- Underwood directed on-duty Sheriff's Office employees to help prepare for and carry out events for the benefit of the Sheriff's Foundation of Chester County, a private non-profit that is not part of the Chester County government.

(*Id.* at 10-11.) Since the Second Superseding Indictment alleges that Defendants used their positions to enrich themselves, the Government contends that such prior acts should be admitted under Rule 404(b) to prove Defendants' knowledge, intent, and *modus operandi*. (*Id.* at 9-11.) Additionally, the Government claims that proof that Underwood and Neal routed similar payments from third parties for security details through a Detention Center account is admissible as evidence intrinsic to the charged conduct. (*Id.* at 11.)

The court finds evidence demonstrating that Underwood previously misused public funds and was informed about the violations for such alleged conduct is admissible under Rule 404(b) to show knowledge and intent. Such evidence is both relevant and necessary to prove the crimes charged herein. Underwood is charged with federal program theft under 18 U.S.C. § 666(a)(1)(A), wire fraud under 18 U.S.C. § 1343, and conspiracy to commit federal program theft and wire fraud under 18 U.S.C. § 371. (ECF No. 146.) Accordingly, the Government must show that Underwood:

- "knowingly" converted local government property valued at $5,000 or more;
- "devised or intend[ed] to devise" a scheme to defraud or obtain money by false or fraudulent pretenses and transmitted or caused to be transmitted by wire in interstate commerce any writings for the purpose of executing such scheme; and
- conspired to "knowingly" convert local property valued at $5,000 or more and "devise[] or intend[] to devise" a scheme to defraud or obtain money by false or fraudulent pretenses and transmitted or caused to be transmitted by wire in interstate commerce any writings for the purpose of executing such scheme.

*See* 18 U.S.C. §§ 666(a)(1)(A), 1343, 371. Thus, Underwood's knowledge of the County's procurement policies and intent to violate them are elements the Government must establish to

prove the charged crimes. Here, evidence that Underwood violated the County's procurement policies on prior occasions and was warned about such violations demonstrates his knowledge of the policies and intent to defraud. The evidence also appears to be reliable because it will be introduced through testimony from "Chester County officials and employees responsible for overseeing managing finances" who "discussed the violations and unapproved expenditures with Underwood." (ECF No. 169 at 10); *see United States v. Gray*, 405 F.3d 227, 240 (4th Cir. 2005) (finding admitted prior bad acts evidence reliable because "witnesses testified under oath and were subject to cross-examination, such that [the defendant] had ample opportunity to challenge the reliability of their accounts").

Finally, any prejudice toward Underwood as a result of this evidence does not substantially outweigh the probative value. "All probative evidence may be prejudicial to the defendant in some way, but [the Fourth Circuit has] found Rule 404(b) evidence to be unfairly prejudicial when it inflames the jury or encourages them to draw an inference against the defendant, based solely on a judgment about the defendant's criminal character or wicked disposition." *Sterling*, 860 F.3d at 248. Here, there is no suggestion that the evidence would invoke emotion in place of reason as a decisionmaking mechanism. There is also no indication that the evidence would cause any confusion with respect to the charges actually lodged against Underwood.

Accordingly, evidence that Underwood previously violated or attempted to violate the County procurement policy and was warned about such violations is admissible to establish knowledge and intent under Rule 404(b). However, to ensure that the jury uses the evidence appropriately, the court will instruct the jury that the evidence is only being admitted for the limited purpose of proving knowledge and intent. *See Queen*, 132 F. 3d at 997 ("In cases where the trial

judge has given a limiting instruction on the use of Rule 404(b), the fear that the jury may improperly use the evidence subsides.").

Next, the court concludes that evidence demonstrating that Sheriff's Office employees heard Underwood and Neal discuss routing security detail payments through a Chester County Detention Center bank account to avoid tax deductions is not intrinsic to the charged conduct. The Government only describes such payments as "similar" to the ones alleged in the Second Superseding Indictment. (ECF No. 169 at 11.) The Government's Motion also suggests that the payments are different from the ones alleged in the Second Superseding Indictment, stating that the payments are from "third parties" rather than the Hazel Pittman Center. (*Id.*) Thus, there is no indication that such payments involve "the same series of transactions" or are "necessary to complete the story of the crime on trial." *Webb*, 965 F. 3d at 266.

Nevertheless, the court finds such evidence to be admissible under Rule 404(b). Testimony from Sheriff's Office employees that they heard Underwood and Neal discuss routing the payments through a specific bank account to avoid tax deductions is relevant and necessary to establish Underwood's and Neal's intent and *modus operandi*. To convict Underwood and Neal of wire fraud, the Government must establish beyond a reasonable doubt that Underwood and Neal "devised or intend[ed] to devise" a scheme to defraud or obtain money by false or fraudulent pretenses and transmitted or caused to be transmitted by wire in interstate commerce any writings for the purpose of executing such scheme. 18 U.S.C. § 1343. This testimony will establish that Underwood and Neal intended to devise a scheme to defraud the Hazel Pittman Center, Chester County Sheriff's Office employees, and others. It will also demonstrate that Underwood and Neal intended to devise a scheme to obtain money by means of false pretenses and intended to transmit writings by wire in interstate commerce for the purpose of executing their scheme. Thus, the

evidence will not only establish Underwood's and Neal's intent to circumvent the County's typical processes through use of the Detention Center account, but also that use of the account was not a mistake. In addition, the testimony will illustrate Underwood's and Neal's *modus operandi* of routing security detail payments through a specific Chester County Detention Center account. The evidence appears to be reliable because it will be introduced through testimony by Sheriff's Office employees who witnessed Underwood and Neal discuss the payments. (ECF No. 169 at 10-11); *see Gray*, 405 F.3d at 240.

Additionally, testimony that Underwood and Neal routed security detail payments through a Chester County Detention Center account to avoid tax deductions is admissible under Rule 403. "There is no unfair prejudice under Rule 403 when the extrinsic act is no more sensational or disturbing than the crimes with which the defendant was charged." *United States v. Sappleton*, 68 F. App'x 438, 440 (4th Cir.2003) (citing *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir.1995)). As the evidence will be admitted to show Underwood's and Neal's intent and *modus operandi* with regard to the security detail payments routed through the Chester County Detention Center account detailed in the Second Superseding Indictment, it is naturally "no more sensational or disturbing" than the crimes charged. To ensure appropriate use of the evidence, the court will issue a limiting instruction confining consideration of the testimony to prove Defendants' intent and *modus operandi*.

Although some alleged prior acts of misuse of public funds are admissible under Rule 404(b), evidence that Underwood required on-duty Sheriff's Office employees to work on Sheriff's Foundation of Chester County events is inadmissible under Rule 404(b). When evaluating the Rule 404(b) relevance factor, courts examine "how closely the prior acts relate to the charged conduct." *Sterling*, 860 F. 3d at 247. While the past conduct "need not be identical"

10

to the crime charged, the mere fact that a defendant may have been involved in prior criminal activity does not itself provide "a sufficient nexus to the charged conduct" if the prior activity "is not related in time, manner, place, or pattern of conduct[.]" *Id.* (internal citations omitted). Here, evidence that Underwood directed on-duty Sheriff's Office employees to work on Sheriff's Foundation events does not bear sufficient similarity to the crimes charged to justify its admission. The Second Superseding Indictment alleges that Defendants "[d]irect[ed] on-duty Sheriff's Office employees to provide manual labor and other services … that personally benefitted" Underwood, Sprouse, and "other members of the Sheriff's Office leadership team[.]" (ECF No. 146 at 5.) It does not contend that Underwood directed on-duty employees to work on various projects for the benefit of the Foundation or even for the benefit of third parties. Given that this evidence would demonstrate that Underwood misused County resources for the benefit of a party not referenced in the Second Superseding Indictment, it is too dissimilar from the crimes charged to satisfy the Rule 404(b) relevance factor. Thus, evidence that Underwood directed on-duty employees to work on Sheriff's Foundation events is inadmissible under Rule 404(b).

C. <u>Alleged prior acts of excessive force by Neal</u>

Third, the Government seeks to introduce evidence that "[s]everal current and former deputies have observed Neal 'rough up' arrestees while the arrestees were handcuffed or otherwise restrained." (ECF No. 169 at 11.) Specifically, the Government intends to introduce evidence that:

- In late 2017 or early 2018, Neal punched a subject multiple times in the face while he was handcuffed and seated in a chair;
- Several officers have seen Neal slam handcuffed subjects into the side of his car and have observed the resulting dents;
- One officer observed Neal slam an individual onto the hood of a car after pulling him out of line at a local club; and
- Neal once used his taser on an individual who was on the ground surrounded by multiple officers and was in the process of being handcuffed. He then

11

> pushed the second individual under arrest onto the back of a car with enough force to cause him to fall to the ground.

(*Id.* at 11-12.) As the Second Superseding Indictment contends that Neal violated K.S.'s rights by knocking him to the ground while handcuffed and injuring his head and arm on November 20, 2018, the Government maintains that the alleged prior acts of excessive force by Neal are admissible under Rule 404(b) to prove intent and absence of mistake. (ECF Nos. 146 at 8, 11; 169 at 12.)

The court agrees that the alleged prior acts of excessive force by Neal are admissible under Rule 404(b) to show intent and absence of mistake. Here, the proposed acts are relevant because they are sufficiently related to the deprivation of rights charge against Neal. The facts underlying each prior act of excessive force are not identical to the charged offense. Although the charged offense only involves Neal knocking K.S. to the ground while handcuffed, the proposed acts also involve punching and the use of a taser. (ECF No. 169 at 11-12.) However, the court finds them sufficiently similar in time and substance to be admissible. Each of the proposed acts occurred during Neal's employment with the Sheriff's Office and involves Neal exerting physical force on arrestees.

The proposed acts are also relevant and necessary to prove Neal's state of mind at the time of the alleged crime. In an excessive force case under 18 U.S.C. § 242, the Government must prove that the defendant willfully violated the victim's rights. *See* 18 U.S.C. § 242. A defendant can be "held criminally responsible only if he specifically intended to use excessive force." *United States v. Cossette*, 593 F. App'x 28, 30 (2d Cir. 2014). Since the charged offense has a specific intent mens rea requirement, Neal's intent is relevant and material. *See United States v. Mize*, No. 1:18-cr-74, 2020 WL 6382534, at *2 (S.D. Ohio Oct. 30, 2020).

"In prosecuting specific intent crimes, prior acts may often be the only method of proving intent." *United States v. Johnson*, 27 F. 3d 1186, 1192 (6th Cir. 1994). This is especially true with regard to the "willfulness" standard of 18 U.S.C. § 242. The pattern jury instructions for § 242 are instructive and state that "[o]ne may be said to act willfully if one acts in open defiance or in reckless disregard of a known and definite federal right." *Modern Federal Jury Instructions-Criminal ¶ 17.01*, Instruction 17-6 (2019). Such intent "need not be expressed," but may, instead, "be reasonably inferred from the surrounding circumstances of the act." *Id.* To do so, the jury "may look at the defendant's words, experience, knowledge, acts, and their results in order to decide this issue of willfulness." *Id.* The prior acts of excessive force are highly probative of whether Neal acted "willfully" when he allegedly used excessive force in arresting K.S. As prior acts are often the only method of proving specific intent crimes such as deprivation of rights, the proposed prior acts here are necessary to the Government's case.

Furthermore, the proposed prior acts will be admitted through the reliable method of witness testimony. *See Gray*, 405 F.3d at 240. The Government plans to introduce the evidence through "[s]everal current and former deputies[.]" (ECF No. 169 at 11.)

Finally, the Court finds that the unfair prejudice of the alleged prior acts of excessive force does not substantially outweigh the probative value of the prior acts. As described above, Neal's prior excessive force incidents are highly probative of an essential element of the charged offense, namely, whether Neal committed the alleged crime with the specific intent of willfulness. Although it is possible that the jury could draw an impermissible character propensity inference, the court can cure this potential prejudice with a limiting instruction. Accordingly, the court finds Neal's prior acts of excessive force admissible under Rule 404(b) to establish intent and absence of mistake. This conclusion is consistent with other decisions in the Fourth Circuit and across the

country. *See, e.g.*, *United States v. Cowden*, 882 F. 3d 464 (4th Cir. 2018) (finding police officer defendant's prior acts of excessive force admissible under Rule 404(b) to establish intent); *United States v. Brown*, 250 F.3d 580 (7th Cir. 2001) (concluding prior act of excessive force was admissible under Rule 404(b) because it was probative of the intent element of 18 U.S.C. § 242); *Mize*, 2020 WL 6382534 (admitting prior excessive force incidents involving defendant because they were probative of intent).

## IV.     CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** the Government's Motion in Limine Seeking Admission of Evidence of Other Acts Committed by Defendants (ECF No. 169). The court grants the motion to admit the following evidence:

- Defendants' use of their positions to retaliate against opponents and reward allies;
- Underwood's previous violations of the County's procurement policies and knowledge of the violations;
- Sheriff's Office employees' statements about Underwood and Neal routing security detail payments through a Detention Center bank account; and
- Neal's use of excessive force against arrestees.

However, the court denies the motion insofar as it will not admit evidence showing that Underwood required on-duty Sheriff's Office employees to work events related to the Sheriff's Foundation of Chester County.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

January 2, 2021
Columbia, South Carolina