# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| United States of America, ) | Criminal Action No.: 0:19-cr-00420-JMC |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| George Alexander Underwood, ) | |
| John Ricardo Neal, Jr., and ) | |
| Robert Andrew Sprouse, ) | |
| ) | |
| Defendants. ) | |

Currently before the court is Defendant George Alexander Underwood's ("Underwood") Motion for Judgment of Acquittal and Motion for New Trial. (ECF No. 270.) For the reasons set forth below, the court **DENIES** Underwood's Motion for Judgment of Acquittal and Motion for New Trial. (ECF No. 270.)

## I.     RELEVANT BACKGROUND

Underwood was elected Sheriff of Chester County in November 2012 and served as Sheriff until May 2019. (ECF No. 146 at 1.) During Underwood's tenure as Sheriff, Defendant Robert Sprouse ("Sprouse") served as Underwood's Chief Deputy and Defendant John Neal ("Neal") was a lieutenant in the Chester County Sheriff's Office ("CCSO"). (*Id.* at 1–2.) On May 7, 2019, a federal grand jury returned an eight-count indictment charging Defendants with civil rights violations, obstruction of justice, and false statements in relation to a conspiracy to conceal excessive use of force and unlawful arrest. (ECF No. 2.) A Superseding Indictment added allegations of financial misconduct on November 20, 2019. (ECF No. 81.)

In June 2020, prosecution of the case was transferred from the U.S. Attorney's Office for the District of South Carolina to the U.S. Department of Justice, Criminal Division, Public Integrity Section. (ECF Nos. 127, 129, 132, 136, 128.) On September 16, 2020, a federal grand

1

jury returned a seventeen-count Second Superseding Indictment against Defendants. (ECF No. 146.) The Second Superseding Indictment (the "Indictment") added a federal program theft charge as well as a series of wire fraud charges. (*Id.*) Specifically, the Indictment provides that Defendants conspired to wrongfully obtain funds by directing on-duty CCSO employees to provide manual labor on Underwood's property and by fraudulently obtaining payments for work at federally funded checkpoints[1] not actually performed; that Defendants abused the right of others; and that Defendants provided false statements to investigative agencies and generated false documentation. (*Id.* at 5–6 ¶ 11.)

A jury trial was held in April 2021 (ECF Nos. 243–45), and Underwood was found guilty of conspiracy in violation of 18 U.S.C. § 371, wire fraud in violation of 18 U.S.C. § 1343, federal program theft in violation of 18 U.S.C. § 666(a)(1)(A), and deprivation of civil rights in violation of 18 U.S.C. § 242. (ECF No. 258.) At the conclusion of the Government's case-in-chief, Defendants moved for judgments of acquittal pursuant to Federal Rule of Criminal Procedure 29. The court heard arguments and ultimately denied the motions. (ECF No. 247.) At the conclusion of trial, Defendants renewed their motions and the court denied them.

On May 7, 2021, Underwood filed a Motion for a Judgment of Acquittal and Motion for New Trial pursuant to Federal Rules of Criminal Procedure 29 and 33. (ECF No. 270.) Defendant requests the court enter a judgment of acquittal and a new trial as to Counts 1, 2, 9, 11, 12, 13, and 14 of the Second Superseding Indictment (ECF No. 146). On May 21, 2021, the Government filed a Response in Opposition to Underwood's Motion. (ECF No. 287.)

---

[1] At the times relevant to the Indictment, the Hazel Pittman Center, a substance abuse facility in Chester County, received a federal grant to, among other things, contract with CCSO to operate public safety checkpoints. (ECF No. 146 at 2 ¶ 5.) The Hazel Pittman Center would issue a check to CCSO based upon invoices submitted by CCSO listing the employees who worked at the checkpoint on a given day. (*Id.*)

## II.      LEGAL STANDARD

*a.      Motion for Judgment of Acquittal*

Under Federal Rule of Criminal Procedure 29, "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." FED. R. CRIM. P. 29 (c)(1). On a motion for judgment of acquittal, "the question is whether the evidence, viewed in the light most favorable to the prosecution, is such that the finder of fact might find the defendant guilty beyond a reasonable doubt." *United States v. Wooten*, 503 F.2d 65, 66 (4th Cir. 1974). "A defendant who brings a sufficiency challenge bears a heavy burden." *United States v. Clarke*, 842 F.3d 288, 297 (4th Cir. 2016) (citing *United States v. Palomino–Coronado*, 805 F.3d 127, 130 (4th Cir. 2015). The court's review of insufficient evidence claims is "sharply limited" and "a defendant is entitled to relief only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Wilson v. Greene*, 155 F.3d 396, 405–06 (4th Cir. 1998) (internal quotations omitted). The court does not weigh the evidence or assess the credibility of witnesses and assumes that the jury resolved all contradictions in favor of the government. *United States v. Blank*, 659 F. App'x 727, 728 (4th Cir. 2016).

*b.      Motion for New Trial*

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). When a Rule 33 motion attacks the weight of the evidence, "the court's authority is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence." *United States v. Arlington*, 757 F.2d 1484, 1485 (4th Cir. 1985). "In deciding a motion for a new trial, the district court is not constrained by the requirement that it view the evidence in the light most favorable to the government[,]" and, therefore, "it may evaluate the credibility of the

witnesses." *Id.* The court's discretion to award a new trial, however, should be exercised sparingly, and "a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." *United States v. Smith*, 451 F.3d 209, 216–17 (4th Cir. 2006) (citing *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003)).

### III.    ANALYSIS

*a.    Motion for Acquittal*

    1.    Count 1 – Conspiracy

The jury found Underwood guilty of conspiracy to commit wire fraud and conspiracy to commit federal program theft. (ECF No. 258 at 1.) Conspiracy is an agreement between two or more persons to join together to accomplish some unlawful purpose. To establish the existence of a conspiracy, the Government must prove each of the following beyond a reasonable doubt: (1) that the defendant and at least one other person agreed to do something which federal law prohibits; (2) that the defendant knew of the conspiracy and willfully joined the conspiracy; and (3) that at some point during the existence of the conspiracy, one of the members of the conspiracy knowingly performed, in the District of South Carolina, one of the overt acts charged in the Second Superseding Indictment in order to accomplish the object or purpose of the agreement. *See, e.g.*, *United States v. Singh*, 518 F.3d 236, 252 (4th Cir. 2008); *United States v. Tucker*, 376 F.3d 236, 238 (4th Cir. 2004). "Knowledge and participation in the conspiracy may be proven by circumstantial evidence." *Tucker*, 376 F.3d at 238 (citing *United States v. Meredith*, 824 F.2d 1418, 1428 (4th Cir. 1987)). "Circumstantial evidence tending to prove a conspiracy may consist of a defendant's relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy." *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996) (internal quotations omitted).

4

Underwood asserts that there is no evidence of any type of agreement formed between the parties. (ECF No. 270 at 7.) As to conspiracy to commit wire fraud, Underwood contends that there was no evidence that he had any knowledge of overpayments from the Hazel Pittman Center for the safety checkpoints. (*Id.*) Regarding conspiracy to commit federal program theft, Underwood contends that "deputies were working on the barn while using compensatory time and they would not have been working on the clock" for CCSO. (*Id.*)

As the court discusses below, the Government presented evidence at trial to support the jury's finding that Underwood and Neal conspired to commit wire fraud. Specifically, witnesses testified that Underwood oversaw the taskforce program at the center of the scheme (ECF 280 at 1603:23–1604:15), that Neal managed the payment process for the checkpoints (*id.* at 1610:19–22, 1617:10–13), and that both Underwood and Neal benefitted from the scheme (ECF 281 at 1744:20–22, 1749:15–22). Additionally, the record reflects substantial testimony to support the jury's finding that Underwood, Sprouse, and Neal conspired to commit program theft by directing subordinates to work on personal projects on Underwood's property (ECF 271 at 102:11–13), during work hours (*id.* at 102:23–103:2; ECF No. 272 at 184:21–185:9; ECF No. 274 at 477:17–20), taking them from their law enforcement duties (ECF No. 271 at 104:17–25; ECF No. 272 at 185:10–186:8, ECF No. 274 at 489:20–24). This evidence is sufficient to support the jury's guilty verdict for conspiracy to commit wire fraud and conspiracy to commit federal program theft.

  2.  <u>Count 2 – Deprivation of Rights</u>

The jury found Underwood guilty of depriving Kevin Simpson ("Simpson") of his Fourth Amendment right to be free from unreasonable seizures by arresting Simpson without probable cause. (ECF No. 258 at 2.) Underwood argues that the Government "did not produce any evidence regarding the standard for probable cause or that there was any type of violation of probable cause"

other than Underwood's expert who testified that, under a hypothetical scenario with the same facts as this case, an officer would have probable cause. (ECF No. 270 at 7.) To show that Underwood deprived Mr. Simpson of his civil rights, the Government must establish that: (1) Underwood deprived Simpson of a right secured by the Constitution or laws of the United States; (2) Underwood acted willfully; (3) Underwood acted under color of law; and (4) Simpson was present in South Carolina. *See United States v. Perkins*, 470 F.3d 150, 153 n.3 (4th Cir. 2006).

As Underwood acknowledges in his Motion (ECF No. 270), his expert, Ray Nash, testified on cross-examination regarding the parameters of probable cause. (ECF No. 283 at 2000:18–23 ("Q: An officer must have probable cause to make a valid arrest; right? A: Correct. Q: Probable cause is a fair probability that a person has committed or was committing a crime. A: Correct.") & 2001:9–15 ("Q: So where an officer wants to make an arrest without a warrant, an officer has to have probable cause to believe a crime was committed in his presence; right? A: Correct. Q: And that probable cause must exist at the time the arrest is made; right? A: That's correct.").) Additionally, the court provided the standard for probable cause in its jury charges. (*Id.* at 2089:24–2090:2 ("Probable cause to arrest someone is present if an objectively reasonable police officer would conclude based on all the circumstances that there was a fair probability that a person had committed or was committing a crime.").)

Further, a reasonable finder of fact could accept the evidence presented at trial as adequate and sufficient to support a conclusion that probable cause did not exist. Simpson was charged with public disorderly conduct and resisting arrest. Under South Carolina law:

> A person who is: (1) found on any highway or at any public place or public gathering in a grossly intoxicated condition or otherwise conducts himself in a disorderly or boisterous manner; (2) uses obscene or profane language on any highway or at any public place or gathering or in hearing distance of any schoolhouse or church; or (3) while under the influence or feigning to be under the influence of intoxicating liquor, without just cause or excuse, discharges any gun,

6

> pistol, or other firearm while upon or within fifty yards of any public road or highway, *except upon his own premises*, is guilty of a misdemeanor and, upon conviction, must be fined not more than one hundred dollars or be imprisoned for not more than thirty days.

S.C. Code Ann. § 16-17-530(A) (emphasis added).  At trial, Simpson testified that he never interfered with police activity or emergency personnel and never left his yard.  (ECF No. 276 at 998:11–998:21.)  Simpson's testimony was corroborated by volunteer fire chief, Frank Culp, who stated that he never saw Simpson in the road or saw him interfering with the scene.  (ECF No. 275 at 867:20–24.)  This evidence supports the jury's finding that Underwood lacked probable cause to arrest Simpson for public disorderly conduct because the jury could reasonably infer Simpson remained "upon his own premises."

      3.     <u>Count 9 – Federal Program Theft</u>

The jury also found Underwood guilty of federal program theft in violation of 18 U.S.C. § 666.  (ECF No. 258 at 3.)  Underwood contends that, "[b]ased on the evidence presented at trial, a reasonable juror could not find [him] guilty of federal program theft."  (ECF No. 270 at 3.)  To support this conviction, the Government was required to prove that: (1) the defendant was, at the time alleged in the indictment, an agent of an organization or of any state or local government or agency that received, in any one-year period, benefits in excess of $10,000 under a Federal program involving any form of Federal assistance; and (2) that the defendant embezzled, stole, obtained by fraud, without authority knowingly converted to the use of any person other than the rightful owner, or intentionally misapplied property valued at $5,000 or more owned by or under the care, custody or control of said agency.  18 U.S.C. § 666(a)–(b).  The cost of an agency employee's labor is property for purposes of this requirement, as long as obtaining the employee's labor is an object of the offense.  *See Kelly v. United States*, 140 S. Ct. 1565, 1573 (2020).  In determining whether a defendant is guilty of this offense, the jury does not consider bona fide

7

salary, wages, fees, or other compensation, or expenses paid or reimbursed in the usual course of business. 18 U.S.C. § 666(c). "Bona fide salary" means salary actually earned in good faith for work done for the employer. *United States v. George*, 841 F.3d 55, 62 (1st Cir. 2016) (citations omitted).

Underwood argues that, at trial, multiple deputies testified that it was normal for them to work at least 20 hours over the required amount per week and, because CCSO was unable to compensate them for excess hours, they received compensatory time. (ECF No. 270 at 3.) Underwood alleges that the deputies used their compensatory time to work on the barn and therefore they were not on the clock owing duties to CCSO during those times. (*Id.* at 4–5.) Ultimately, Underwood contends that the Government "failed to prove beyond a reasonable doubt that the deputies were on the clock when they were working on the barn[,]" and, therefore, failed to prove beyond a reasonable doubt" that he and Sprouse stole an amount in excess of $5,000 from Chester County. (*Id.* at 5.)

The testimony at trial undermines this contention. At trial, several deputies testified that they would work on Underwood's property at Neal's direction (ECF No. 271 at 102:11–13), during work hours (*id.* at 102:23–103:2; ECF No. 272 at 184:21–185:9; ECF No. 274 at 477:17–20), that they did not feel like they had a choice (ECF No. 271 at 103:12–13), and that they were taken off work assignments to do such work (*id.* at 104:17–25, ECF No. 272 at 185:10–186:8, ECF No. 274 at 489:20–24). The combined hours worked by these deputies at their pay rates meet the $5,000 amount. *See United States v. Hines*, 541 F.3d 833, 837 (8th Cir. 2008) (finding that § 666 permits "the government to aggregate multiple transactions in a single count to reach the $5,000 minimum as long as they were part of a single plan or scheme"). Although there was conflicting testimony from one deputy who stated that the deputies were using comp time when they were working on

8

the barn (ECF No. 274 at 508:19, 509:7–510:25), it is the duty of the jury, not the court, "to weigh contradictory evidence and inferences, pass on the credibility of witnesses, and draw the ultimate factual conclusions." *United States v. Gomez-Jimenez*, 750 F.3d 370, 379 (4th Cir. 2014), *as corrected* (April 29, 2014). The evidence presented was sufficient to support the jury's finding that Underwood was guilty of federal program theft.

    4.    <u>Counts 11, 12, & 13 – Wire Fraud</u>

The jury also charged Underwood with several counts of wire fraud. (ECF No. 258 at 3–4.) Underwood argues that "[n]o reasonable juror could have found that [he] committed wire fraud or aided and abetted in committing wire fraud." (ECF No. 270 at 6.) To establish a violation of 18 U.S.C. § 1343, the Government must prove that the defendant devised or intended to devise a scheme to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises that were material; and that for the purpose of executing the scheme, the defendant transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce any writings, signs, signals, pictures, or sounds. 18 U.S.C. § 1343; *see also United States v. Taylor*, 942 F.3d 205, 213–14 (4th Cir. 2019). The phrases "scheme to defraud" and "scheme for obtaining money or property" mean any deliberate plan of action or course of conduct by which someone intends to deceive or cheat another or by which someone intends to deprive another of something of value. *United States v. Raza*, 876 F.3d 604, 623 (4th Cir. 2017).

Underwood asserts that the Government failed to present evidence showing that he had any knowledge of the scheme to wrongfully obtain money from the Hazel Pittman Center for working at the safety checkpoints. (ECF No. 270 at 6.) Specifically, Underwood contends that there was no evidence showing that he saw or knew anything about the invoices and, without seeing the

invoices, there would have been no way for him to have any knowledge regarding overpayment. (*Id.*)

At trial, Maria Bates, Executive Director of the Hazel Pittman Center, testified that Underwood oversaw the grant-funded taskforce aimed at developing strategies for reducing DUI-related crashes. (ECF No. 280 at 1603:23–1604:15.) Bates further testified that, in 2016 or 2017, she met with Underwood per his request regarding inconsistencies in use of the grant funds. (*Id.* at 1620:17–1621:13.) Bates stated that she and Underwood reviewed the invoices, many of which had Underwood's name on them, and Underwood stated that if his name was on them, he was there and knew what had occurred. (*Id.* at 1622:3–19.) Additionally, the Government presented evidence that Underwood deposited a check reflecting payment for a checkpoint at which he had not worked, and that Underwood, Neal, and Randy Marsh received larger payments associated with the checkpoints than other law enforcement employees. (ECF No. 281 at 17:44:20–22 (payment to Underwood over the amount billed on the invoice), 1749:15–22 (comparing the amount billed and the actual payment to the officer who worked the check point), & 1750:15–1751:23 (discussing the check deposited by Underwood).) This evidence is sufficient to support the jury's verdict finding Underwood guilty of wire fraud.

b.  *Motion for New Trial*

In support of his Motion for a New Trial, Underwood relies entirely on the arguments set forth in support of his Motion of Judgment of Acquittal. (ECF No. 270 at 8.) The record, as set forth above, shows the Government put forth sufficient evidence to support each of Underwood's convictions. Accordingly, this is not a "rare circumstance" requiring the court to grant a new trial. *See Smith*, 451 F.3d at 216–17.

## IV.    CONCLUSION

Based upon the foregoing, the court **DENIES** Defendant Underwood's Motion for Judgment of Acquittal and Motion for New Trial.  (ECF No. 270.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

December 10, 2021
Columbia, South Carolina

11